JOHN H. CIGAVIC III (SBN: 231806)
(basiclegalservices.me@gmail.com)
**(ATTORNEY – BASIC LEGAL SERVICES)**
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065
Fax: (415) 432-4301
Attorney for Plaintiff Colette Savage

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### (SAN FRANCISCO DIVISION)

| | |
|---|---|
| Colette Savage, an individual citizen of Texas,<br><br>          Plaintiff,<br><br>          v.<br><br>Steven Sommer, an individual citizen of California; Joshua Sommer, an individual citizen of California; Amie Summers, an individual citizen of California; Stephanie Sommer, an individual citizen of California; Dr. Richard Ganz, an individual citizen of California; Lynn Ganz, an individual citizen of California; Jordonna Piel, an individual citizen of California and Jerry Piel, an individual citizen of California,<br>          Defendants. | **CASE NO.:**<br><br>**VERIFIED COMPLAINT OF PLAINTIFF COLETTE SAVAGE FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; INVASION OF PRIVACY; INTENTIONAL INTERFERENCE WITH EXPECTED INHERITANCE & MALICIOUS PROSECUTION**<br><br>**(DEMAND FOR JURY TRIAL)** |

COMES NOW PLAINTIFF COLETTE SAVAGE AND AGAINST THE NAMED PARTIES HERETO BRINGS THIS COMPLAINT FOR ACTUAL, CONSEQUENTIAL, INCIDENTAL AND PUNITIVE DAMAGES AS FOLLOWS:

//

P1202.2015.BLS10

## PARTIES

1.    Colette Savage (hereinafter sometimes referred to as "Plaintiff" or "Colette") is an individual over the age of eighteen (18) years and a citizen, resident and domiciliary of the State of Texas, domiciled in Hubbard and living and conducting business therein.

2.    Defendant Lynn Ganz is an individual over the age of eighteen (18) years and a citizen and resident of the County of Sonoma, State of California.

3.    Defendant Richard Ganz, MD is an individual over the age of eighteen (18) years and a citizen and resident of the County of Sonoma, State of California.

4.    Defendant Stephanie Sommer, RN is an individual over the age of eighteen (18) years and a citizen and resident of the County of Marin, State of California.

5.    Defendant Amie Summers is an individual over the age of eighteen (18) years and a citizen and resident of the County of Marin, State of California.

6.    Defendant Joshua Sommer is an individual over the age of eighteen (18) years and a citizen and resident of the County of Marin, State of California.

7.    Defendant Steven Sommer is an individual over the age of eighteen (18) years and a citizen and resident of the County of Sonoma, State of California.

8.    Defendant Jordonna Piel is an individual over the age of eighteen (18) years and a citizen and resident of the County of San Mateo, State of California.

9.    Defendant Jerry Piel is an individual over the age of eighteen (18) years and a citizen and resident of the County of San Mateo, State of California

10.    Plaintiff does not know the true names and capacities of defendants sued herein as DOES 1 through 50, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege the true names and capacities of defendants DOES 1 through 50, inclusively, when the same are ascertained.

11.    Plaintiff is informed and believes and based thereon alleges that each of the Defendants, including the Defendants sued as DOE herein, are responsible in some manner for the occurrences herein alleged, and were the agent(s), co-conspirator(s),

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

2

**VERIFIED COMPLAINT OF PLAINTIFF COLETTE SAVAGE
FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF
EMOTIONAL DISTRESS; INVASION OF PRIVACY; INTENTIONAL INTERFERENCE WITH
EXPECTED INHERITANCE & MALICIOUS PROSECUTION**

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

interested persons, and/or employee(s) of each of the remaining Defendants, and in doing the things herein alleged were acting at all times within the scope of such agency, conspiracy, interest and/or employment, and that Plaintiff's damages as herein alleged were proximately caused by all named Defendants and all DOE Defendants working together and that each and every Defendant are jointly and severally liable for the acts of each and all.

12.    It is further alleged that each and every Defendant, and each of them, employed agents, including attorneys (and especially the lawfirm of Kornblum, Cochran, Erickson & Harbison of San Francisco and Santa Rosa ("Kornblum Firm")), California law enforcement personnel and state (and possible federal) agents, private investigators, and including persons at California Adult Protective Services, to advance, further, prosecute and achieve the wrongs alleged herein: all Defendants jointly and severally, and each of them individually, are personally, fully, vicariously and actually responsible and liable for the acts of said agents, which acts each and every Defendant called for, prosecuted advanced, required, adopted, ratified, approved, benefited from and desired, as if said acts were their own individual act(s).

## <u>JURISDICTION AND INTRA-DISTRICT ASSIGNMENT</u>

13.    Jurisdiction and venue are proper in this Northern California judicial district in San Francisco/Oakland Division because the total amount of money in dispute in this lawsuit exceeds $75,000, exclusive of Plaintiff's claims for punitive damages, and Plaintiff is a citizen and domiciliary of Texas and all of the Defendants are citizens of the State of California and all are domiciled in this district and division and the acts complained about and the injuries suffered occurred in this district and division (primarily San Mateo County).  Each and every of the Defendants are present herein and subject to the process of this honorable court.  Plaintiff thus alleges that jurisdiction is proper in this federal district court on the basis of diversity of citizenship of the parties, pursuant to 42 USC §1332 and Marshall v. Marshall, 547 US 293 (2006).

**VERIFIED COMPLAINT OF PLAINTIFF COLETTE SAVAGE
FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF
EMOTIONAL DISTRESS; INVASION OF PRIVACY; INTENTIONAL INTERFERENCE WITH
EXPECTED INHERITANCE & MALICIOUS PROSECUTION**

P1202.2015.BLS10

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

## COMMON FACTUAL ALLEGATIONS

14.     Beatrice "Trixie" Savage (ne Singer) (hereinafter at all times "Beatrice") was born in Berlin, Germany on 28 October 1925 to a then privileged home.  Beatrice and her family, however, were of Jewish heritage and with the rise of the Nazi Party her family fled Germany, traveling to Shanghai.  While in Shanghai, Beatrice became a famous member of the Shanghai ballet and met Defendant Steven Sommer's father, Arthur ("Art") Sommer, and they married.  After several years Beatrice and Art moved to Bakersfield, California and divorced in 1953.  Beatrice married William B. ("Pat") Savage in 1953.  This lawsuit involves the acts of one side of the family (the Sommers side) to take control of Beatrice in her last days so as to gain control over her body and estate and to disinherit the other (Savage) side by a concerted plan of action to interfere with Plaintiff's inheritance expectancy and to cause Plaintiff severe emotional distress, humiliation, embarrassment and shame through orchestrated wilfull, intentional and concerted actions by all Defendants, and each of them, directed at Beatrice and Plaintiff (and Mark Savage ("Mark")) so as to cause the Savage side to flee California and leave Beatrice at the control and device(s) of the Sommers side, who at all times intended to, desired, wanted and worked to take control of Beatrice's person and sizable estate to the exclusion of Plaintiff (and Mark).  The Piel Defendants are related to Beatrice and took the Sommers and Ganz Defendants side.

15.     Beatrice and William Savage were married for 60 years and were the Plaintiff's biological parents.  Beatrice had a total of five children with two different husbands (only four those children are relevant here[1]): Beatrice's first child is defendant Steven Sommer (born of Beatrice and Art Sommer in about 1952), Beatrice's second biological child is Plaintiff Colette Savage (born of Beatrice and Pat Savage in 1954), Beatrice's third biological child is Mark Savage (born of Beatrice and Pat Savage in 1956), and

---

[1] Pat Savage had a son from a previous marriage named Stanley who is deceased and is not relevant to this action.

**VERIFIED COMPLAINT OF PLAINTIFF COLETTE SAVAGE
FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF
EMOTIONAL DISTRESS; INVASION OF PRIVACY; INTENTIONAL INTERFERENCE WITH
EXPECTED INHERITANCE & MALICIOUS PROSECUTION**

P1202.2015.BLS10

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

1  Beatrice's fourth biological child is Michelle Savage (born of Beatrice and Pat Savage in

2  1958).  Steven's children are Defendants Joshua, Amie and Stephanie, born of Defendant

3  Lynn Ganz.  Dr. Richard Ganz is the step-father of all Sommer children Defendants as of

4  the time of their marriage.  Defendant Jordonna Piel is Beatrice's neice and her husband

5  is Jerry Piel.

6  16.    Beatrice and Pat created the "Savage Family Trust" in October 1993 and also

7  created a Will, which Will provided that the entire estate of Beatrice and Pat would pass

8  to the next generation (s) through the form of the "Savage Family Trust" in effect at the

9  time of the passing of the second of them: the Trust was "restated" four times, in

10  December 2012, February 2013, August 2013 and then finally on 23 January 2014.

11  17.    Beatrice died on 12 August 2014 in her home in San Mateo, California.  Beatrice

12  had pulmonary fibrosis and several other health conditions, including an essential tremor

13  and arthritis.  Beatrice was very active and social up until about 28 February 2014 when

14  she may have had a vascular stroke or other disabling event, whereafter Beatrice became

15  dependent upon the caregivers Beatrice had handpicked prior to her having a disabling

16  incident (Winnie Ullusa ("Winnie") and Sylvia Vea ("Sylvia")).  Throughout her life,

17  Beatrice was a very intelligent business-woman who expressly wanted maximum control

18  of her life for as long as she possibly could and wanted to remain in her San Mateo home

19  and near her elderly friends.

20  18.    Beatrice was private about her money and testamentary interests, but

21  notwithstanding this general privacy, Beatrice told Plaintiff in February of 2014 that

22  Beatrice did 'not want Plaintiff to have to worry about finances' after Beatrice's death

23  and that Plaintiff would receive Beatrice's condominium in San Mateo, California as *part*

24  of Plaintiff's inheritance following Beatrice's death, thereby giving Plaintiff a reasonable

25  certainty she would inherit from her Mother's estate.  It is unknown to Plaintiff if

26  Beatrice told other family members about their potential inheritances.

27  //

28

**VERIFIED COMPLAINT OF PLAINTIFF COLETTE SAVAGE
FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF
EMOTIONAL DISTRESS; INVASION OF PRIVACY; INTENTIONAL INTERFERENCE WITH
EXPECTED INHERITANCE & MALICIOUS PROSECUTION**

P1202.2015.BLS10

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

19.     At the time of the February 2013 Trust Restatement, Beatrice named Mark as her Power of Attorney, Medical Durable Power of Attorney, and HIPPA Authorized Agent. Following Beatrice's disabling event in February 2014, Defendant Steven called upon Mark in Texas and requested Mark assume his duties as Beatrice's Power of Attorney. Mark responded by traveling from Texas to California to be with Beatrice (and to help Beatrice's hand-picked caregivers) in her likely final days.  Mark arrived around 6 March 2014.  Plaintiff arrived in California from Texas on or about 10 March 2014 also to be with her mother and took up residence in Beatrice's San Mateo home (as was customary for Plaintiff, the daughter of Beatrice).  And so began a concerted course of action by Defendants, and each of them, to regain control of Beatrice and her affairs from Plaintiff and Mark and to distress Plaintiff and interfere with Plaintiff's inheritance and relationship with her mother.

20.     Following the arrival of Mark and Colette in California in March 2014, Defendants, and each of them, jointly, collectively and collusively, embarked upon what eventually appeared to Plaintiff to be a concerted plan of action and conspiracy to alienate Colette from the affections Beatrice and gain control over Beatrice and her estate.  Defendants' purpose was to achieve (or maintain) the dis-inheritance of Colette or the diminishment of Colette's inheritance and to increase Defendants own personal, financial and pecuniary gain by inheriting from Beatrice.  Defendants' plan of action included a series of invasions of Beatrice's home, egregious medical batteries on Beatrice, invasion of Beatrice's personal and medical privacy, invasion of Plaintiff's privacy, and assault and intimidation of Plaintiff, Mark and Beatrice's caregivers Winnie and Sylvia.  The sum of Defendants' actions amount to totally outrageous conduct designed to harm Colette personally, financially and emotionally and to interfere with her relationship with her dying mother.  21.   Defendants, and each of them, acted both directly by attacking Beatrice's body and mind (to challenge her testamentary intentions), by physically alienating Colette from her mother, and by violating the privacy of Beatrice

**VERIFIED COMPLAINT OF PLAINTIFF COLETTE SAVAGE
FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF
EMOTIONAL DISTRESS; INVASION OF PRIVACY; INTENTIONAL INTERFERENCE WITH
EXPECTED INHERITANCE & MALICIOUS PROSECUTION**

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

and of Colette in the home of her mother.  Defendants also acted indirectly and caused Beatrice's estate to incur substantial unnecessary costs, charges and fees (especially attorneys' fees) that substantially depleted Beatrice's estate and Colette's inheritance interest therein.

22.    Plaintiff recognized Defendants' campaign of action as beginning on 14 March 2014 when Defendant Stephanie stole Beatrice's pain medication (morphine) to conduct a test and left Beatrice exposed to potential great physical pain.  On said date, Defendant Stephanie came to Beatrice's home for a family dinner and, after the guests left and without permission or authorization from Beatrice's caregivers (Mission Hospice, or Plaintiff or Mark) Defendant Stephanie removed two bottles of morphine from Beatrice's home claiming she was performing her own personal investigation.  To accomplish this theft, Defendant Stephanie made accusations against Plaintiff, Mark and Beatrice's nurse, Jane Porter, RN to Winnie and Sylvia of un-described malfeasance.

23.    Defendants Steven and Stephanie thereafter attempted to assert that Stephanie stealing Beatrice's pain medication was necessary because they believed, without any evidence whatsoever, that Mark and Colette were overmedicating Beatrice to control Beatrice and her testamentary intentions.  The truth is and always was that neither Mark nor Colette gave Beatrice any medication whatsoever, including and especially morphine, and that Beatrice's testamentary intentions were always her own.

24.    Then, on 16 March 2014 around 4 p.m., Beatrice began screaming in what appeared to Plaintiff to be agonizing pain.  Plaintiff anxiously asked a caregiver to call Mission Hospice so they could administer Beatrice her morphine, but care-giver Sylvia reported the morphine was removed by Defendant Stephanie two days earlier, *supra*. Plaintiff was thereby forced to witness her dying mother suffer agonizing pain and had to stand by helplessly because Defendant Stephanie stole Beatrice's morphine, all of which caused Plaintiff to suffer great and extreme emotional distress.

//

**VERIFIED COMPLAINT OF PLAINTIFF COLETTE SAVAGE
FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF
EMOTIONAL DISTRESS; INVASION OF PRIVACY; INTENTIONAL INTERFERENCE WITH
EXPECTED INHERITANCE & MALICIOUS PROSECUTION**

P1202.2015.BLS10

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

25.    Defendant Stephanie initially failed to respond to urgent calls and text messages by Plaintiff, and others, to immediately return Beatrice's morphine.  Later, Defendant Stephanie falsely denied stealing the morphine in a text message to Mark.  But then, on the morning of 17 March and following a communication from Plaintiff that she would go to the authorities, Defendant Stephanie came to Beatrice's home (with her father, Defendant Steven) and they returned two viles of morphine: one full and one empty. Defendants Stephanie and Steven showed no remorse, provided no apology, accused others of wrongdoing and never took any responsibility for Defendant Stephanie's theft of controlled substances or the physical pain it caused Beatrice (and the emotional distress it caused Plaintiff).

26.    On information and belief, Defendant Stephanie had no authorization and no authority at any time from anyone to conduct any investigation of Beatrice's medication or perform any examinations of Beatrice's body.  Defendant Stephanie was not Beatrice's nurse, was not assigned as her nurse and did not manage Beatrice's care.  On information and belief, Defendant Stephanie knew she had no right to deprive Beatrice of hospice pain medication at any time (which is likely a violation of Defendant Stephanie's nursing ethics).  In fact, at a deposition of Defendant Stephanie in June 2015 (in a meritless Trust Contest Stephanie and the Sommers initiated), Defendant Stephanie refused to answer any questions about morphine or her later examinations and diagnoses of Beatrice: Defendant Stephanie then dismissed the Trust Contest before her deposition could be concluded and her responses compelled.

27.    After the Morphine incident, Defendant Stephanie did not stop harassing Beatrice and Plaintiff: Stephanie came to Beatrice's hospice home on 27 March and stalked the premises for hours in what appeared to Plaintiff to be a purposeful attempt to make Beatrice, Mark, Plaintiff and Beatrice's care-givers uncomfortable: Stephanie succeeded and Plaintiff was very distressed, disturbed and worried about Stephanie's conduct and intentions towards Plaintiff and Beatrice.

**VERIFIED COMPLAINT OF PLAINTIFF COLETTE SAVAGE**
**FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF**
**EMOTIONAL DISTRESS; INVASION OF PRIVACY; INTENTIONAL INTERFERENCE WITH**
**EXPECTED INHERITANCE & MALICIOUS PROSECUTION**

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

28.    Then, on 31 March 2014, Defendant Steven called Beatrice's home and left a threatening message for Mark, challenging Mark to a fight.  Thereafter, on information and belief, on 1 April 2014 Defendant Steven arrived at Beatrice's San Mateo home seeking to achieve the physical altercation he promised by phone two days before: Defendant Steven entered the hospice home of Beatrice and had a physical altercation with Mark and one of the caregivers (Manasa Vega ("Manasa")) in Beatrice's kitchen that involved Defendant Steven pushing and shoving Mark and verbally assaulting Mark and Manasa.  During the altercation Defendant Steven was demanding, *inter alia*, to see Beatrice's Will or at least be informed of its contents.  Defendant Amie was present for the altercation and was taking photos of the home and demanding to know the contents of Beatrice's Will, claiming 'it is all about full disclosure', and then Defendant Amie, on information and belief, took Beatrice's "Do Not Rescucitate" ("DNR") form from the refrigerator.

29.    Plaintiff, now fearful for herself, her mother and her brother Mark's safety, and feeling under siege by the Sommers Defendants, responded by filing for a temporary restraining order ("TRO") on 7 April 2014 against Defendant Steven (for the physical altercation), against Defendant Stephanie (for the drug theft and slander), and against Defendant Amie (for invasion of privacy and for Defendant Amie allegedly removing Beatrice's "Do Not Resuscitate" Order ("DNR") from the refrigerator of Beatrice's hospice home).

30.    On or about 25 April 2014, the San Mateo Superior Court (Hon. George Miram) granted the TRO against Defendant Steven but denied the TRO requests against Defendants Stephanie and Amie.

31.    Instead of calming the situation, however, Plaintiff and Mark's TRO requests initiated much more aggressive acts by the Sommers Defendants, who then included the remaining Defendants, and each of them.  Defendants then resorted to actions involving subterfuge and the use of agents to achieve their desired control over Beatrice and her

**VERIFIED COMPLAINT OF PLAINTIFF COLETTE SAVAGE
FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF
EMOTIONAL DISTRESS; INVASION OF PRIVACY; INTENTIONAL INTERFERENCE WITH
EXPECTED INHERITANCE & MALICIOUS PROSECUTION**

P1202.2015.BLS10

estate and the alienation of Plaintiff.  The Sommers Defendants retained the Kornblum Firm (reportedly on a contingency fee basis) in mid-April 2014 and used that lawfirm to attack Plaintiff and Mark.  At the same time in April 2014, on information and belief, Defendants also pressured the San Mateo Police Department to "investigate" Plaintiff and Mark, leading to several visits by San Mateo police and detectives in Beatrice's hospice home.  Defendants also reportedly called Adult Protective Services during this time and sent them to investigate Plaintiff and Mark.  During all of these visits by executive authorities, these agents reportedly inquired as to 'the contents of Beatrice's will and testamentary intentions'.  Also, Defendant Stephanie allegedly threatened to employ contacts she had in the FBI to investigate Plaintiff and Mark.  Finally, Defendants, and each of them, reportedly hired a private investigator to follow Plaintiff and Mark and investigate them into May 2014, including at the hotel Colette had to move to. Notwithstanding all of these assaults on Beatrice's hospice home and Plaintiff and Mark personally, no wrongdoing whatsoever was ever found by any of these law enforcement agencies to have occurred against Beatrice by Plaintiff or Mark.  Beatrice was mortified, disgusted and appalled by Defendants' conduct and Plaintiff felt severely nervous, threatened, anxious, upset and distressed: Plaintiff's mother's final days were being investigated by Defendants, and each of them, so the Defendants could take over Beatrice's estate.  Plaintiff was left in a state of constant fear, agitation, angst, anxiety and distress for her safety and the safety of Beatrice and Mark.

32.     Following the TRO requests, and in addition to Defendants' orchestrated onslaught of executive investigations, Defendants, and each of them, also began a disturbing series of unauthorized medical examinations of Beatrice's body detailed *infra*. Defendants' medical examinations of Beatrice were unauthorized, unethical, tortuous as to Beatrice, horrifying as to Plaintiff, improper, and were all conducted, on information and belief, without any consent forms, release forms from Beatrice's Health Care Directive, and without any HIPPA authorization forms signed by anyone. On information

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

**VERIFIED COMPLAINT OF PLAINTIFF COLETTE SAVAGE
FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF
EMOTIONAL DISTRESS; INVASION OF PRIVACY; INTENTIONAL INTERFERENCE WITH
EXPECTED INHERITANCE & MALICIOUS PROSECUTION**

P1202.2015.BLS10

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

and belief, there was no permission from Beatrice herself or her actual doctors, social worker(s) or case manager(s) for any of the below exams, which were conducted surreptitiously, unlawfully and unethically and by the concerted plan and collusion of Defendants, working together, to discredit Plaintiff and Mark, to take control of Beatrice and her estate, and to alienate Plaintiff from her mother's affections so as to revoke or drastically diminish Plaintiff's inheritance (and to hopefully inherit more themselves).

33.     Further to ¶32, and as a separate violation of Beatrice's rights to dignity and privacy, Defendants transmitted reports of Beatrice's health condition, and photos and videos of Beatrice's exposed body parts (including intimate body parts such as Beatrice's buttocks) to the Kornblum Firm, and possibly others, by public facsimile and email so that this 'evidence' could be used against Plaintiff and Mark in legal proceedings. Defendants gave no regard to Beatrice's dignity nor Plaintiff's sensibilities.

34.     On 12 April 2014, and while Plaintiff was in Beatrice's home, Defendant Dr. Ganz (who was admittedly <u>not Beatrice's doctor</u>) performed a medical "capacity examination" on Beatrice under false and fraudulent pretenses and, on information and belief, without permission from Beatrice or any authorized agent of Beatrice. Dr. Ganz, working in conjunction with his wife (Defendant Lynn Ganz) entered Beatrice's home announcing the intent to have a 'social visit' and then Defendant Lynn distracted Plaintiff and took Plaintiff to the kitchen while Dr. Ganz entered Beatrice's room and performed a capacity exam on Beatrice. Dr. Ganz also reportedly used his cell phone camera to take video and pictures of Beatrice's uncovered body and made accusations against Mark of trying to 'control' Beatrice and reportedly stated that Mark 'wanted her to die'. Dr. Ganz reportedly forwarded said video and pictures to the Kornblum Firm (in violation of applicable privacy laws) and memorialized his unlawful exam in a "capacity report" that was filed with the San Mateo Superior Court on or about 22 April 2014.

35.     During Dr. Ganz' surreptitious examination of Beatrice on 12 April 2014, Colette became alerted to something not right when she noticed Beatrice's bedroom door was

**VERIFIED COMPLAINT OF PLAINTIFF COLETTE SAVAGE**
**FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF**
**EMOTIONAL DISTRESS; INVASION OF PRIVACY; INTENTIONAL INTERFERENCE WITH**
**EXPECTED INHERITANCE & MALICIOUS PROSECUTION**

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

closed: as Plaintiff moved towards the bedroom door Defendant Lynn began shouting after Colette (and caregiver Sylvia) demanding they do not go into Beatrice's hospice room. Plaintiff opened the door and entered Beatrice's room and found Dr. Ganz leaning in to Beatrice's bed, an inch away from her face, videotaping bedridden Beatrice on his smart phone. Plaintiff became extremely emotionally distraught when she saw Dr. Ganz treating her mother in this way: in that moment Plaintiff realized that the Ganz Defendants had joined the Sommers Defendants in their efforts to remove Beatrice from her home in San Mateo and to alienate the Savages from Beatrice's affections and estate. Plaintiff was shocked, horrified and extremely distressed by the sight of an unauthorized person examining her mother intimately and taking photos and video: Plaintiff was crying and tried to cover Beatrice's body with her own. Plaintiff then demanded the Ganz Defendants leave the premises. As both Ganz Defendants were leaving Beatrice's home one of them said words to the effect of 'what's wrong with videotaping?' Plaintiff now alleges that the Ganz Defendants' behaviour was totally outrageous and beyond all bounds of decency in a civil society and that such behavior caused severe and lasting emotional distress to Plaintiff, who then felt the Ganz Defendants and the Sommers Defendants were working together to discredit Plaintiff (and Mark) while treating Beatrice as a chattel and battering Beatrice in her most vulnerable state so as to move Beatrice from her home, gain control of Beatrice's estate, force the disinheritance of Plaintiff and hopefully increase their own inheritances.

36.    The next known medical examination of Beatrice occurred, on information and belief, on 25 April 2014 (the same day as the hearing on the TRO requests of Plaintiff and Mark referenced above), when Defendants Stephanie and Lynn Ganz broke into Beatrice's hospice home without authorization, barged past Beatrice's care-givers and performed a medical examination on Beatrice's body and created a diagnosis. Defendants Stephanie and Lynn Ganz allegedly removed or lowered Beatrice's diaper, turned her over to examine Beatrice's buttocks, wiped medication from a healing

**VERIFIED COMPLAINT OF PLAINTIFF COLETTE SAVAGE
FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF
EMOTIONAL DISTRESS; INVASION OF PRIVACY; INTENTIONAL INTERFERENCE WITH
EXPECTED INHERITANCE & MALICIOUS PROSECUTION**

P1202.2015.BLS10

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

"decubitus" on Beatrice's buttock (which re-opened the wound), and photographed Beatrice's buttocks and emailed those photographs to the Kornblum Firm.  This examination, diagnosis and photographing of Beatrice was all done in violation of basic common decency and Beatrice's rights of privacy, as well as numerous health related privacy laws.  Defendant Stephanie then wrote the following in an email to the Kornblum Firm (and this email was later circulated to Mark's legal counsel by the Kornblum Firm):

> Oma was only oriented to person, not oriented to place or time, alert and orintedx1, with a GCS of 14, she was able to follow commands, but when repated, Oma continued to state wher am I.  Oma's strength in both hands were equeal, but she was unable to squeez my hands.  Pupils pinpoint, redactive minimally to light, used my cell phone light.  Mucous membranes very dry.  Oma was supine approx. 30 degrees up in bed, with her hed (sic) hyper-extended. Oma appeared to have lost a lot of weight since I saw her in last three weeks.  I palpated her abdomen, soft-nontender, Oma was wearing a diaper.  A 4x4 curlex pad dressing over her cocycyx (sic) **covering a stage 1 decub ulcer.  Oma had bilaterial state 1 decubitus ulcers (sic) to her heels**.  She had an axillary temperature of a 101.1, and her radial pulse was thready, and her heart rate was 87.  Oma's skin was dry, pale, hot.  **Oma smelled of a foul odor**, and seemed to be covered up with copious amounts of perfume.  Oma needs the following tests: CBC, chem.. Panel; mag; phos; coags; Lfts; lipase u/s; urine culture; chest e-rayto see if PF gotten worse or changed (very important).  She needs IV fluids, nutrition, wound care, physical therapy, and hygiene.  With all the methadone she is probably given as well can cause pronged (sic) QT, she need and EKG to assess for any new dysrthmias, and potential cardiovascular ischemia.  Xanax, methadone, morphine, haldol, Ativan, some anti-depressants all together or in large amounts or in overdose can cause respiratory depression and hypoxia.  Oma's pulmonary status is already compromised because she has been diagnosed with pulmonary fibrosis and needs oxygen.  So, all meds she is taking can add to her respiratory distress.  Due to her pulmonary fibrosis and the medications she is on she needs to be monitored by licensed medial people who understand how to recognized the side effects of the medications and what they can cause.

This unlawful diagnosis triggered alarming emails from the Kornblum Firm to Mark's counsel late that (Friday) evening that demanded said counsel take immediate action to remedy Beatrice's exaggerated (by Defendant Stephanie) condition.

//

**VERIFIED COMPLAINT OF PLAINTIFF COLETTE SAVAGE
FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF
EMOTIONAL DISTRESS; INVASION OF PRIVACY; INTENTIONAL INTERFERENCE WITH
EXPECTED INHERITANCE & MALICIOUS PROSECUTION**

P1202.2015.BLS10

37.     On information and belief, on 26 April 2014 Defendants Stephanie, Amie and Jerry Piel came to Beatrice's hospice home again without warning and performed another unauthorized medical examination of Beatrice that, on information and belief, included Defendant Jerry Piel rolling Beatrice over, making Beatrice grasp his hands and move her feet.  Defendant Jerry Piel allegedly tried to put Beatrice into a wheelchair but stopped when Beatrice started screaming.  Jerry Piel allegedly told Beatrice that she would be 'moved soon'.

38.     On information and belief, on the morning of 27 April 2014 another medical battery of Beatrice occurred when Defendant Amie falsely told the caregivers over the house intercom that she was alone but then Defendants Stephanie and Amie and Defendant Jordonna Piel and her husband Defendant Jerry Piel barged into Beatrice's home, intimidated the caregivers, woke Beatrice up and performed another medical examination of Beatrice that included lifting Beatrice's legs to check her heals and checked Beatrice's temperature and then threatened to put Beatrice into a wheelchair the next day so they could feed Beatrice Chinese food on the porch and get her up to walk around.

39.     Finally, on information and belief, on 28 April 2014, Defendants Stephanie and Amie came to Beatrice's home for another exam but left when they learned the Conservator appointee, Michael Lydon, was coming.  Plaintiff, while not present for the late April exams (because she had been forced to move from her Mother's bedside to a nearby Howard Johnson Express), learned of the exams from her brother Mark and was (and continues to be) engulfed in grief, shock, horror and is extremely distressed by the occurrence of these medical batteries on Beatrice and the treatment of her mother by all Defendants, and each of them, as described herein.

40.     On information and belief, Plaintiff alleges that at least one of the intentions of Defendants, and each of them, was to separate Plaintiff from her mother and move Beatrice from her home in San Mateo to a nursing home closer to the Ganz Defendants in

**VERIFIED COMPLAINT OF PLAINTIFF COLETTE SAVAGE
FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF
EMOTIONAL DISTRESS; INVASION OF PRIVACY; INTENTIONAL INTERFERENCE WITH
EXPECTED INHERITANCE & MALICIOUS PROSECUTION**

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

P1202.2015.BLS10

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

1    Healdsburg (approximately 100 miles away from Beatrice's home).  Defendants, and

2    each of them, intended this outcome even though Beatrice always stated emphatically

3    that she never wanted to go out of the county she lived in (San Mateo) and wanted to be

4    in her home and have her hand-picked caregivers, her son Mark and daughter Colette

5    take care of her at the end of her life.  Beatrice did not want to be in a nursing home and

6    wanted to be closer to her elderly friends in San Mateo. Nevertheless, and directly

7    contrary to the desires of Beatrice, all Defendants conspired to remove Beatrice from

8    hospice and the comfort of her home.

9    41.    Throughout April 2014 Defendants rotated, appearing at Beatrice's home and

10   acting in a threatening manner to Beatrice's caregivers and to Mark and Colette, which

11   constant siege caused substantial and lasting emotional distress to Plaintiff, and also

12   damaged Plaintiff and Beatrice's estate financially.  In sum, Beatrice's hospice home was

13   tragically compromised and she was alienated from the care and love of Plaintiff, who at

14   all times felt her life was threatened by the Defendants, and each of them and their

15   agents, and that Beatrice was exposed to their aggressive actions and desires.

16   42.    On information and belief, Defendants even had Plaintiff and Mark followed by

17   Private Investigators in April and May 2014.

18   43.    Defendants' actions, and each of them, included threats against Plaintiff,

19   harassment, stalking and assault in Beatrice's household through a well orchestrated

20   rotation where each Defendant played a part to harm Plaintiff and Beatrice under the

21   guise of investigating Beatrice's care.  Defendants lied to gain entry to Beatrice's home

22   so they could batter Beatrice and hopefully obtain evidence to use against Plaintiff and

23   Mark.  Defendants succeeded in running Colette from her mother's home at the time of

24   Beatrice's death, all to Colette's great and lasting emotional distress. Almost every wish

25   of Beatrice for the end of her life was destroyed by the Defendants conduct as described

26   herein, all to Plaintiff's great and lasting emotional distress and substantial financial loss.

27    Plaintiff was alienated from her mother's affection and could not be with her mother in

28

**VERIFIED COMPLAINT OF PLAINTIFF COLETTE SAVAGE
FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF
EMOTIONAL DISTRESS; INVASION OF PRIVACY; INTENTIONAL INTERFERENCE WITH
EXPECTED INHERITANCE & MALICIOUS PROSECUTION**

1  Beatrice's final days.  Plaintiff needed to obtain a Court order to attend her own mother's

2  funeral!  Plaintiff begged the Court to allow her to see her mother before she died, but it

3  was too late.

4  44.    Defendants, and each of them, intended to shock, humiliate, annoy and distress

5  Plaintiff and to interfere with Plaintiff's inheritance from Beatrice and they succeeded:

6  Plaintiff was and remains severely emotionally distressed and financially harmed.

7  Plaintiff's inheritance is now at least on the order of approximately $350,000 less than

8  Beatrice intended (exclusive of interest).  Each and every Defendant contributed to the

9  expense and infliction of emotional distress incurred by Plaintiff and the household of

10 Beatrice and they all acted willfully, wantonly, fraudulently, recklessly and with an

11 intention to harm Beatrice and Plaintiff personally and financially, which conduct

12 subjects each and every one of them to joint and several liability and punitive damages.

13 ### FIRST CAUSE OF ACTION

14 **(All Defendants: Intentional Infliction of Emotional Distress)**

15 45.    Plaintiff incorporates the allegations in paragraphs 1 through 44 as if stated herein

16 in full.

17 46.    The conduct of Defendants, and each of them, was the joint act and intention of

18 each and every Defendant, and was done as a conspiracy, and said conduct, separately

19 and taken together, is totally outrageous and has no place in a civil society.  Civilized

20 people do not band together to medically batter a dying woman to take her from her home

21 and turn her against her daughter so they can gain control of an estate for their own

22 benefit.  Civilized doctors and nurses do not use their medical training as part of a

23 conspiracy to medically batter a dying woman to take her from her home and turn her

24 against her daughter so they can gain control of an estate for their own benefit.

25 47.    All Defendants, and each of them, intended to cause Plaintiff severe emotional

26 distress with their concerted and collusive plan of action, as outlined above.  All

27 Defendants knew or should have known that Plaintiff loved her mother dearly, meant

28

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

16

P1202.2015.BLS10

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

Beatrice no harm, and knew that Plaintiff would be severely emotionally distressed by a campaign of medical battery, investigations, harassment, invasions of privacy and stalking aimed at Beatrice and Plaintiff so the Defendants could get more money for themselves and take money and property from Beatrice and Plaintiff.  All Defendants further should have known that Plaintiff is an emotional and spiritual person who would find Defendants banding together to medically batter a dying woman to take her from her home and turn her against her daughter so they can gain control of an estate for their own benefit to be uniquely offensive and distressing to Plaintiff.

48.     At a minimum, all Defendants, and each of them, gave little or no thought to how Plaintiff would react to a campaign of medical battery, investigation, harassment, invasions of privacy and stalking aimed at Beatrice and Plaintiff so the Defendants could get money for themselves and take money and property from Beatrice and Plaintiff, and deny Plaintiff the opportunity to be with her mother during her final days.  However, each Defendant should have known that a reasonable person in general and Plaintiff in particular would be severely emotionally distressed by Defendants' collusive campaign of action against Beatrice and Plaintiff, as described herein.

49.     Plaintiff suffered and continues to suffer severe emotional distress that includes indignity, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame as a direct result of the outrageous actions and conduct of all Defendants, as outlined herein.

50.     Plaintiff is therefore seeking monetary damages for financial loss and pain and suffering within the jurisdictional limits of this court for Defendants' outrageous conduct, according to proof.   Each and every Defendant contributed to the expense and infliction of emotional distress incurred by Plaintiff and the household of Beatrice and acted willfully, wantonly, fraudulently, recklessly and with an intention to harm Plaintiff personally and financially that subjects each and every one of them to punitive damages. //

**VERIFIED COMPLAINT OF PLAINTIFF COLETTE SAVAGE**
**FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF**
**EMOTIONAL DISTRESS; INVASION OF PRIVACY; INTENTIONAL INTERFERENCE WITH**
**EXPECTED INHERITANCE & MALICIOUS PROSECUTION**

## SECOND CAUSE OF ACTION

### (All Defendants: Negligent Infliction of Emotional Distress)

51.    Plaintiff incorporates the allegations in paragraphs 1 through 44 as if stated herein in full.

52.    All Defendants, and each of them, were at least negligent in inflicting Plaintiff with severe emotional distress for the actions alleged in ¶¶1-44.  To the extent any Defendant can articulate a colorable basis for treating Beatrice and Plaintiff (and Mark) as they did, that treatment was done carelessly and not in conformity with applicable standards of care governing citizens, doctors and nurses.

53.    Plaintiff suffered and continues to suffer severe emotional distress that includes suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame as a direct result of the outrageous actions and conduct of Defendants, as outlined in detail *supra*.

54.    Plaintiff is therefore seeking monetary damages for financial loss and pain and suffering within the jurisdictional limits of this court for Defendants' emotionally distressing conduct, according to proof.   Each and every Defendant contributed to the expense and infliction of emotional distress incurred by Plaintiff and the household of Beatrice and acted willfully, wantonly, fraudulently, recklessly and with an intention to harm Plaintiff personally and financially that subjects each and every one of them to punitive damages.

## THIRD CAUSE OF ACTION

### (Count 1 - All Defendants: Invasion of Privacy)

55.    Plaintiff incorporates the allegations in paragraphs 1 through 44 as if stated herein in full.

56.    All Defendants, and each of them, through their concerted plan of action and rotation took efforts and succeeded in violating Plaintiff's right to privacy while Plaintiff

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

P1202.2015.BLS10

was living as a guest in her mother Beatrice's home in March and April 2014.

57.    Plaintiff at all relevant times had an expectation of privacy while living as a guest in her mother Beatrice's home in March and April 2014 so Plaintiff could assist the caregivers in taking care of Beatrice and bring joy and happiness to her mother's remaining days by singing, telling stories of the past, and sharing jokes and spiritual stories: Colette needed to be with her mother at this time in peace and privacy.

58.    All Defendants, and each of them individually and separately by collusion, at some time during March and April 2014 intentionally intruded in Beatrice's home by barging in, battering Beatrice, sending investigators, harassing, stalking, menacing, threatening and attempting to intimidate Plaintiff to leave Beatrice's home.

59.    All Defendants, and each of them individually and separately by collusion and intrusions that would be highly offensive to a reasonable person attempting to create a peaceful environment to care for a dying mother invaded Plaintiff (and Beatrice's) privacy.  The invasions perpetrated by Defendants, and each of them, as above, were by way of constant rotation, through the employment of agents (including law enforcement) and were nothing more than a campaign of action based on harassment and intimidation aimed at gaining control of Beatrice's person and estate and alienating Beatrice from Plaintiff so as to harm Plaintiff emotionally and financially and to interfere with Beatrice's testamentary wishes and Plaintiff's inheritance.

60.    As a result of Defendants' invasions of Plaintiff's privacy, Plaintiff was harmed by having to leave Beatrice's home and take up residence away from her dying mother, alienating Plaintiff from Beatrice at a critical time.  Plaintiff had to incur expenses and costs associated with separate lodging in California and suffered severe emotional distress at not being able to be present at her mother's deathbed, death and funeral.

61.    Without Defendants, and each of their, invasions of Plaintiff's privacy, as above, which conduct was a substantial factor in causing Plaintiff's harm, below, Plaintiff could have and would have remained at her mother's beside and remained a guest in her mother

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

**VERIFIED COMPLAINT OF PLAINTIFF COLETTE SAVAGE FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; INVASION OF PRIVACY; INTENTIONAL INTERFERENCE WITH EXPECTED INHERITANCE & MALICIOUS PROSECUTION**

1  Beatrice's home.

2  62.    Plaintiff is therefore seeking monetary damages for financial loss and pain and

3  suffering within the jurisdictional limits of this court for Defendants' invasions of

4  privacy, according to proof.   Each and every Defendant contributed to the invasions of

5  privacy suffered by Plaintiff and the household of Beatrice and acted willfully, wantonly,

6  fraudulently, recklessly and with an intention to harm Plaintiff personally and financially

7  that subjects each and every one of them to punitive damages.

8  **(All Defendants – Count 2: Stalking)**

9  63.    Plaintiff hereby incorporates the allegations in paragraphs 1 through 44 as if herein

10  stated in full.

11  64.    Each and every Defendant, and each of them, violated Plaintiff's right to privacy

12  by stalking Plaintiff and Beatrice in that each and every Defendant, and each of them,

13  engaged in a pattern of conduct with the intent to follow, alarm, harass and annoy

14  Plaintiff (as evidenced by the numerous visits of Defendants, and each of them, to

15  Beatrice's home, as detailed *supra*).  Defendants' pattern of conduct is supported by other

16  witnesses (in the form of sworn declarations and through their percipient knowledge) in

17  addition to Plaintiff's testimony.

18  65.    As part of the pattern of conduct herein complained of, Defendants, and each of

19  them, Plaintiff reasonably feared for her safety and the safety of Beatrice and Mark.

20  66.    As part of the pattern of conduct herein complained of, Defendants, and each of

21  them, made believable threats with the intent to place Plaintiff in reasonable fear for her

22  safety and the safety of Beatrice and Mark, including Defendant Steven threatening

23  violence, all Defendants constantly coming to Beatrice's hospice home and attempting to

24  intimidate Plaintiff and Beatrice's care-givers, Defendants sending the police and Adult

25  Protective Services to investigate Plaintiff (and Mark), and Defendants threatening to

26  involve 'contacts at the FBI' in investigating Plaintiff (and Mark), and Defendants hiring

27  a private investigator to investigate Plaintiff in April and May 2014.

28

**VERIFIED COMPLAINT OF PLAINTIFF COLETTE SAVAGE
FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF
EMOTIONAL DISTRESS; INVASION OF PRIVACY; INTENTIONAL INTERFERENCE WITH
EXPECTED INHERITANCE & MALICIOUS PROSECUTION**

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

67.    On multiple occasions Plaintiff demanded Defendants, and each of them, stop their campaign of harassments but Defendants, and each of them, persisted in their pattern of conduct during March and April 2014 and into May 2014.  Plaintiff had to obtain a court order to attend her own mother's funeral!

68.    As a result of Defendants' invasions of Plaintiff's privacy, Plaintiff was harmed by having to leave Beatrice's home and return to Texas, alienating Plaintiff from Beatrice at a critical time.  Plaintiff had to incur expenses and costs associated with separate lodging in California and suffered severe emotional distress at not being able to be present at her mother's deathbed.

69.    Without Defendants, and each of their, invasions of Plaintiff's privacy and stalking, as above, which conduct was a substantial factor in causing Plaintiff's harm, below, Plaintiff could have and would have remained at her mother's beside and remained a guest in her mother Beatrice's home along with Beatrice's selected caregivers.  Defendants conduct also drove Beatrice's hand-picked caregivers from Beatrice's home at this vulnerable time, which further threw Plaintiff into depression and anguish for which she seeks damages.

70.    Plaintiff is therefore seeking monetary damages for financial loss and pain and suffering within the jurisdictional limits of this court for Defendants' invasions of privacy and stalking, according to proof.   Each and every Defendant contributed to the stalking suffered by Plaintiff and the household of Beatrice and acted willfully, wantonly, fraudulently, recklessly and with an intention to harm Plaintiff personally and financially that subjects each and every one of them to punitive damages.

## FOURTH CAUSE OF ACTION

### (All Defendants: Intentional Interference with Expected Inheritance)

71.    Plaintiff incorporates the allegations in paragraphs 1 through 44 as if stated herein in full.

//

**VERIFIED COMPLAINT OF PLAINTIFF COLETTE SAVAGE
FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF
EMOTIONAL DISTRESS; INVASION OF PRIVACY; INTENTIONAL INTERFERENCE WITH
EXPECTED INHERITANCE & MALICIOUS PROSECUTION**

P1202.2015.BLS10

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

72.    Plaintiff had an expectation of inheriting from her mother's estate following a conversation Plaintiff had with Beatrice in February 2014 wherein Beatrice told Plaintiff she did 'not want Plaintiff to have to worry about finance' after Beatrice's death and that Plaintiff would receive Beatrice's condominium in San Mateo, California as *part* of Plaintiff's inheritance following Beatrice's death, thereby giving Plaintiff a reasonable certainty she would inherit from her Mother's estate.

73.    Plaintiff has a reasonable degree of certainty that but for the actions of Defendants, and each of them, as alleged in this Complaint, that Plaintiff's inheritance from Beatrice would have been substantially larger (on the order of in excess of approximately $350,000 larger) had Defendants not engaged in the independently tortuous and wrongful conduct herein alleged as directed at Beatrice (i.e. the numerous invasions of privacy and medical batteries outlined in this Complaint).

74.    Defendants, and each of them, at all relevant times, acted intentionally and directed their actions so as to harm Plaintiff's inheritance interests by either having Plaintiff disinherited entirely (or by taking such provocative and extraordinary actions against Plaintiff, and Plaintiff's inheritance interest, that Plaintiff's inheritance would substantially or totally diminished).

75.    The actions of Defendants, and each of them, were a coordinated series of independently tortuous medical batteries on Beatrice and invasions of Beatrice's privacy rights in her hospice home and in her person, all so the Defendants, and each of them, could gain control of Beatrice's person and estate, benefit themselves, and exclude Plaintiff from Beatrice's testamentary intentions or diminish Plaintiff's inheritance.

76.    Plaintiff was harmed by Defendants, and each of them, intentional conduct aimed at Beatrice but designed to disinherit Plaintiff or diminish her inheritance, in that Plaintiff incurred substantial attorneys' fees and costs associated with defending against Defendants, and each of their actions, as detailed in this Complaint. The Defendants, and each of them, intended to interfere with Plaintiff's inheritance from Beatrice and they

**VERIFIED COMPLAINT OF PLAINTIFF COLETTE SAVAGE**
**FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF**
**EMOTIONAL DISTRESS; INVASION OF PRIVACY; INTENTIONAL INTERFERENCE WITH**
**EXPECTED INHERITANCE & MALICIOUS PROSECUTION**

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

1   succeeded: Plaintiff's inheritance is now at least on the order of approximately $350,000

2   less than Beatrice intended (exclusive of interest).

3   77.    Plaintiff is therefore seeking monetary damages for pain and suffering, financial

4   damages for expenses, costs, attorneys' fees associated with defending against the

5   Defendants actions and intentional interference with her inheritance, according to proof.

6   Each and every Defendant contributed to the expense and interference with Plaintiff's

7   inheritance and acted willfully, wantonly, fraudulently, recklessly and with an intention

8   to harm Beatrice's testamentary intentions and to Plaintiff personally and financially that

9   subjects each and every one of them to punitive damages.

10                              **FIFTH CAUSE OF ACTION**

11                              **(Malicious Prosecutions)**

12   78.    All Defendants, and each of them, beginning in April 2014 and continuing through

13   July 2015 were actively involved in bringing and continuing a Conservatorship Action

14   (San Mateo Superior Court Case No. 124417) either as parties, witnesses or procurers of

15   evidence.  All Sommers Defendants were, at all relevant times, represented by the

16   Kornblum Firm and on information and belief jointly prosecuted the Conservatorship

17   Action and a Trust Contest (San Mateo Superior Court Case No. 125167). The factual

18   allegations in both actions were identical and unsupported and unsupportable and there

19   was no proper legal basis for initiating or prosecuting either action.  Both actions

20   resolved against the Defendants and were initiated and prosecuted without probable cause

21   and with malice, all to Plaintiff's great emotional distress and financial harm, well in

22   excess of the jurisdictional limits of this Court.

23   79.    Beatrice at the time had a sizeable estate and Defendant's actions were at all times

24   directly related to gaining control of the estate, especially so the Sommers Defendants

25   could gain control of a commercial building in San Anselmo, California (and associated

26   rents) that the Sommers Defendants valued at in excess of one million dollars.  On

27   information and belief, the remaining Defendants participated in the hopes of increasing

28

**VERIFIED COMPLAINT OF PLAINTIFF COLETTE SAVAGE
FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF
EMOTIONAL DISTRESS; INVASION OF PRIVACY; INTENTIONAL INTERFERENCE WITH
EXPECTED INHERITANCE & MALICIOUS PROSECUTION**

P1202.2015.BLS10

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

their own inheritances from Beatrice, if any.

**(Count 1 All Defendants - Malicious Prosecution of Conservatorship Action)**

80.    On 22 April 2014 Defendant Joshua Sommer gave his name to a Conservatorship Action in San Mateo Superior Court (Case No. 124417).  All Sommers Defendants were at all times jointly represented by the Kornblum Firm and all Defendants were at all times participants as parties, witnesses or procurers of evidence.

81.    In furtherance of Defendant Joshua's Conservatorship Petition, he employed his wife, Kali Sommer, a Pharmacist, to make a Declaration on 24 April 2014 recounting a 6 April 2014 social visit with Beatrice: Kali opined as to Beatrice's medical condition and concluded Beatrice had 'symptoms of overdose'.

82.    In the Conservatorship legal papers (and otherwise, including to Beatrice's long-time friends Helga Schoenfeld, Inga Greunis, and other Savage and Sommers family members, and Beatrice's attorney John Breckenridge) the Sommers Defendants made knowingly false, fraudulent, many are defamatory per se, and are outrageous allegations against Plaintiff (and Mark), specifically alleging that:

(a) Plaintiff was attempting to kill her mother;

(b) Plaintiff was overmedicating Beatrice to influence her;

(c) Plaintiff was directing others to overmedicate Beatrice so Plaintiff could influence her;

(d) Mark and Colette were isolating family members;

(e) Plaintiff isolated Beatrice against the Sommers Defendants via intimidation tactics and violence;

(f) Plaintiff wished she could give Beatrice more drugs;

(g) Plaintiff was attempting to influence Beatrice to change her Will / Trust to favor Plaintiff (and allegedly harm Defendants, and each of them);

(h) Plaintiff came to California solely for the purpose of stealing from and obtaining money and property from her dying mother;

P1202.2015.BLS10

(i) Plaintiff and Mark were paying for both Colette [and Mark's] own living expenses via Beatrice's bank account;

(j) Plaintiff was dispensing improper amounts of medication, especially morphine, to Beatrice in amounts that could result in immediate coma;

(k) that Defendant Joshua was the property manager for Beatrice and should therefore be the conservator of her estate; and

(l) Defendant Stephanie's improper medical diagnosis that concluded that Beatrice had sepsis, sores and a fever that were allegedly brought about by the neglect and wrongdoing of Plaintiff (and Mark).

83.    Each and every of these statements was knowingly false and fraudulent and was made by the Defendants, and each of them, to others and through the writings of the Kornblum Firm in Court filings, pleadings and correspondence, with the purpose being to influence those persons and the legal process so as to persuade the San Mateo Superior Court Probate Judge to strip Mark of his Powers of Attorney and Medical authorizations, and to give those powers to Defendant Joshua (so that Joshua could exercise power and control over Beatrice and disinherit Plaintiff and Mark and increase the inheritances of the remaining Defendants, all to Plaintiff's great pecuniary loss and substantial emotional distress).  The fraudulent assertions of the Defendants, and each of them, and various perjured declarations were all made as part of a conspiracy to divert and destroy Colette's relationship with Beatrice, to cause Plaintiff financial and emotional harm and to interfere with Beatrice's testamentary wishes for Plaintiff.  The allegations in the Conservatorship Action were made without any factual basis and without any legal basis supporting them and were made without probable cause and maliciously.

84.    Defendant Joshua failed in his attempt to become Conservator.  Joshua's representation that he was the 'property manager' for the commercial building in San Anselmo, California was false and was expressly denied by Beatrice.  Joshua was not appointed Conservator of Beatrice or her estate.  Defendants did not prevail in the

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

**VERIFIED COMPLAINT OF PLAINTIFF COLETTE SAVAGE
FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF
EMOTIONAL DISTRESS; INVASION OF PRIVACY; INTENTIONAL INTERFERENCE WITH
EXPECTED INHERITANCE & MALICIOUS PROSECUTION**

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

Conservatorship Action.

85.    The allegations made in Paragraph 82 are not valid, many are defamatory per se and all were made maliciously and with the intent to use the legal process to harm Plaintiff personally, professionally, reputationally, to interfere with Plaintiff's intended lawful use of her property and inheritance and/or to force a settlement from Plaintiff (and Mark) that was not merited by the claims made.

86.    Although the San Mateo Superior Court found none of the allegations in the Conservatorship Action to be true, the viciousness of the attack led Mark to nevertheless give up his role as attorney in fact for Beatrice.  Then Plaintiff was forced to move from Beatrice's home, causing expense and severe emotional distress to Plaintiff.  The Court, to regain the peace destroyed by Defendants, appointed a fiduciary to regulate visits with Beatrice, to intercede in the unlawful medical examinations on Beatrice's body, and to take control of the estate permanently.  The appointment of a Conservator cost Beatrice's estate substantial sums for Conservator fees (approximately in excess of $70,000), attorneys fees for the Conservator (approximately in excess of $100,000) and required the retention of new, different and significantly more costly independent doctors, and other care providers for Beatrice (approximately in excess of $30,000).   The total amount in Conservator related attorney fees and costs exceeds $200,000 (exclusive of interest and penalties owed by Defendants, and each of them).

87.    Plaintiff is therefore seeking monetary damages for pain and suffering, financial damages for expenses, costs, and substantial attorneys' fees associated with defending against the Defendants malicious prosecution of the Conservatorship Action, according to proof.  The Defendants, and each of them, maliciously prosecuted Plaintiff and cost Plaintiff on the order of approximately in excess of $200,000 (exclusive of interest). Each and every Defendant contributed to the expense and cost to Plaintiff and her inheritance and acted willfully, wantonly, fraudulently, recklessly and with an intention to harm Beatrice's testamentary intentions and to harm Plaintiff personally and

P1202.2015.BLS10

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

financially that subjects each and every one of them to punitive damages.

**(Count 2 Against Defendants Steven Sommer, Joshua Sommer, Amie Summers, Stephanie Sommer ("Sommers Defendants") - Malicious Prosecution of Trust Contest)**

88.    Neither Mark nor Colette were present in the State of California on 23 January 2014 at the time of the final Savage Trust Restatement, and all Sommers Defendants, and each of them (and the Kornblum Firm), at all relevant times had actual knowledge that neither Mark nor Colette were in the State of California on 23 January 2014.  All Sommers Defendants, and each of them, and the Kornblum Firm, at all relevant times falsely made allegations of serious wrongdoing by Plaintiff (and Mark) that would have required Plaintiff's physical presence in the State of California on 23 January 2014 and continued to utter said falsely made allegations of serious wrongdoing after the statements were shown by independent state investigators to be false and wholly without evidentiary support and foundation.  All Sommers Defendants separately claimed that Beatrice had capacity in February 2014 (one month after the Restatement) and then changed their position with no factual basis whatsoever.

89.    Following Beatrice's death on 12 August 2014 the Sommers Defendants, and each of them, waited until nearly the last day before the statute of limitations ran to bring a Will / Trust Contest: on 6 December 2014 (and through the representation of the Kornblum Firm, still reportedly on a contingency fee arrangement and, on information and belief, still representing all Sommers Defendants) Defendant Stephanie gave her name to a "Petition to Invalidate Trust Restatement" that challenged the 23 January 2014 Trust Restatement of Beatrice ("Trust Contest").  On information and belief, Defendant Stephanie's Trust Contest was merely a front for all Sommers Defendants, and each of them.  All Sommers Defendants were at all times jointly represented by the Kornblum Firm and were at all times participants as parties, witnesses or procurers of evidence.

//

**VERIFIED COMPLAINT OF PLAINTIFF COLETTE SAVAGE
FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF
EMOTIONAL DISTRESS; INVASION OF PRIVACY; INTENTIONAL INTERFERENCE WITH
EXPECTED INHERITANCE & MALICIOUS PROSECUTION**

P1202.2015.BLS10

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

90.    The Trust Contest merely re-alleged the knowingly false (and now independently corroborated as false by independent State investigators) allegations appearing in the Conservatorship Action and was based on <u>no new facts, evidence or information whatsoever</u>.  Paragraph 82 is hereby incorporated as if restated in full.

91.    The Sommers Defendants' purpose was to further abuse Plaintiff, interfere with her inheritance, to force a settlement from Mark and/or to set aside or substantially diminish, through litigation, Plaintiff's inheritance.  The Sommers Defendants actions in filing and prosecuting the Trust Contest were knowingly in direct contravention of Beatrice's known wishes (as expressly stated in her 23 January 2014 Trust Restatement, where Beatrice requested that no contests be initiated by anyone) and was for no proper, lawful or just purpose and was based on malice.

92.    No reasonable person in the Sommers Defendants circumstances would have believed that there were reasonable grounds or probable cause to bring the Trust Contest against Plaintiff (and Mark) because all of the allegations in the Trust Contest were proven to be false in the Conservatorship Action by independent state investigators, because Petitioner (Defendant Stephanie) admitted that no additional facts or information became known to the Sommers Defendants between the Conservatorship Action and the Trust Contest, because all Sommers Defendants knew as a matter of fact that neither Plaintiff nor Mark were in California on 23 January 2014 (the date of the final restatement) and because all Sommers Defendants separately confirmed that Beatrice had capacity in February 2014 (before they changed position without basis).  Neither Plaintiff nor Mark intended to or did influence Beatrice's testamentary wishes and no Sommers Defendant had sufficient contact with Beatrice during January 2014 to honestly declare that she lacked capacity to make bequests or was unduly influenced by Plaintiff or Mark on 23 January 2014.

93.    All Sommers Defendants therefore brought an invalid claim and brought the Trust Contest primarily for a purpose other than succeeding on the merits of the claim, out of ill

**VERIFIED COMPLAINT OF PLAINTIFF COLETTE SAVAGE
FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF
EMOTIONAL DISTRESS; INVASION OF PRIVACY; INTENTIONAL INTERFERENCE WITH
EXPECTED INHERITANCE & MALICIOUS PROSECUTION**

P1202.2015.BLS10

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

will, to deprive Plaintiff of the beneficial use of her property, to force a settlement from Mark and/or to "get even" with Plaintiff for seeking TRO's in April 2014.  The Sommers Defendants wanted Colette to lose the bulk of her residuary inheritance either by disinheritance or by having to hire attorneys and incur substantial fees and costs to defend herself against their Trust Contest.

94.     On 15 July (and again on 16 July and finally on 21 July), the Sommers Defendants dismissed the Trust Contest, first with prejudice as to Mark, then without prejudice as to Mark only, and finally without prejudice as to all Respondents (including Plaintiff). The Sommers Defendants never produced any evidence in support of their allegations in the Trust Contest prior to the three dismissals.

95.     Plaintiff is therefore seeking monetary damages for pain and suffering, financial damages for expenses, costs, and substantial attorneys' fees associated with defending against the Sommers Defendants malicious prosecutions, according to proof.  The Sommers Defendants, and each of them, maliciously prosecuted Plaintiff and cost Plaintiff on the order of approximately $350,000 (exclusive of interest).  Each and every Sommers Defendant contributed to the expense and cost to Plaintiff and her inheritance and acted willfully, wantonly, fraudulently, recklessly and with an intention to harm Beatrice's testamentary intentions and to harm Plaintiff personally and financially that subjects each and every one of them to punitive damages.

## **PRAYER**

WHEREFORE, Plaintiff prays judgment as follows:

1.     For damages for Intentional Infliction of Emotional Distress;

2.     For damages for Negligent Infliction of Emotional Distress;

3.     For damages for Invasion of Privacy;

4.     For damages for Intentional Interference with Expected Inheritance;

5.     For damages for Malicious Prosecution;

**VERIFIED COMPLAINT OF PLAINTIFF COLETTE SAVAGE
FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF
EMOTIONAL DISTRESS; INVASION OF PRIVACY; INTENTIONAL INTERFERENCE WITH
EXPECTED INHERITANCE & MALICIOUS PROSECUTION**

P1202.2015.BLS10

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

6.      For punitive damages;

7.      For attorney fees and costs of suit;

8.      For pre-judgment interest;

9.      For any equitable relief to which Plaintiff is entitled; and

10.     For such other and further relief as the court deems just and proper.


Dated:      3 December 2015

**JOHN H. CIGAVIC III, ESQ.
(ATTORNEY – BASIC LEGAL SERVICES)**

By: _____/s/ John H. Cigavic III_____

JOHN H. CIGAVIC III, ESQ.
Attorney for Plaintiff Colette Savage


## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on any and all issues triable by jury.


Dated:      3 December 2015

**JOHN H. CIGAVIC III, ESQ.
(ATTORNEY – BASIC LEGAL SERVICES)**

By: _____/s/ John H. Cigavic III_____

JOHN H. CIGAVIC III, ESQ.
Attorney for Plaintiff Colette Savage


## ATTESTATION OF SIGNATURES

I hereby attest that I have on file all holographic signatures corresponding to any signatures indicated by a conformed signature (/S/) within this e-filed document.


Dated:      3 December 2015

**JOHN H. CIGAVIC III, ESQ.
(ATTORNEY – BASIC LEGAL SERVICES)**

By: _____/s/ John H. Cigavic III_____

JOHN H. CIGAVIC III, ESQ.
Attorney for Plaintiff Colette Savage

**VERIFIED COMPLAINT OF PLAINTIFF COLETTE SAVAGE FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; INVASION OF PRIVACY; INTENTIONAL INTERFERENCE WITH EXPECTED INHERITANCE & MALICIOUS PROSECUTION**

P1202.2015.BLS10

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOHN H. CIGAVIC III, ESQ. (ATTORNEY – BASIC LEGAL SERVICES)
201 Mission Street, Suite 1200
San Francisco, CA 94105
Tel: (415) 859-5065 – Fax: (415) 432-4301

## **VERIFICATION**

I Colette Savage, on behalf of myself, have read the foregoing **VERIFIED COMPLAINT OF PLAINTIFF COLETTE SAVAGE FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; INVASION OF PRIVACY; INTENTIONAL INTERFERENCE WITH EXPECTED INHERITANCE & MALICIOUS PROSECUTION** against Steven Sommer, an individual resident and citizen of California; Joshua Sommer, an individual resident and citizen of California; Amie Summers, an individual resident and citizen of California; Stephanie Sommer, an individual resident and citizen of California; Dr. Richard Ganz, an individual resident and citizen of California; Lynn Ganz, an individual resident and citizen of California; Jordonna Piel, an individual resident and citizen of California and Jerry Piel, an individual resident and citizen of California, and I know its contents and verify that the same is true of my own knowledge, except as to matters which are therein stated to be on information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed at Hubbard, Texas.

**COLETTE SAVAGE**

Dated:     December 3, 2015

By: _____/s/ Colette Savage_____

COLETTE SAVAGE

**VERIFIED COMPLAINT OF PLAINTIFF COLETTE SAVAGE
FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF
EMOTIONAL DISTRESS; INVASION OF PRIVACY; INTENTIONAL INTERFERENCE WITH
EXPECTED INHERITANCE & MALICIOUS PROSECUTION**

P1202.2015.BLS10